**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13417
Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

PETER KELLENBERGER,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 1:23-cr-00191-ECM-JTA-3

————————————

Before BRANCH, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Peter Kellenberger appeals his conviction for conspiracy to distribute—and to possess with intent to distribute—methamphetamine. He argues that the district court abused its

discretion in allowing the United States to present impermissible lay testimony by DEA Task Force Officer Ethan Wiggins. He objects to testimony provided by Officer Wiggins during trial regarding the meaning of drug jargon used in wiretapped calls between Kellenberger and his co-conspirator, as well as identifying both men by their voices. Although the government presented Officer Wiggins as a lay witness, Kellenberger argues that his testimony violated Rule 701 because it was based on specialized knowledge and thus constituted "expert testimony admitted under the guise of lay opinions." *See* Fed. R. Evid. 701(c).

Because the government concedes that Kellenberger properly preserved his objection, we review the district court's admission of Officer Wiggins's testimony for abuse of discretion. *See United States v. Hawkins*, 934 F.3d 1251, 1264 (11th Cir. 2019).

This Court has "repeatedly held that law enforcement officers with sufficient experience may offer lay opinion testimony about code words and nicknames used by criminals." *United States v. Booker*, 136 F.4th 1005, 1020 (11th Cir. 2025). This is because "particularized knowledge garnered from years of experience within the field may be tendered as lay opinion." *Id.* (quotation omitted). And that is precisely the kind of testimony that Officer Wiggins offered in this case. Officer Wiggins explained the meanings of terms used in the wiretapped calls like "ball" (an eighth of an ounce) and "zip" (a full ounce). He also explained nicknames used by the conspirators based on his experience. All of this was proper.

Kellenberger argues that Officer Wiggins improperly *interpreted* the calls to the jury when he explained that they concerned methamphetamine transactions, but Kellenberger concedes that neither he nor his co-conspirator used the terms "drugs" or "methamphetamine." That is precisely the point: the calls were conducted in coded language to disguise their real topic. Officer Wiggins properly explained, based on his experience, the coded language used on the calls for the jury, and that is perfectly consistent with his status as a lay witness. This Court has held that "a lay witness may provide interpretations of code words when the meaning of these words is not perfectly clear without the witness's explanations." *United States v. Jayyousi*, 657 F.3d 1085, 1103 (11th Cir. 2011) (alterations adopted and quotations omitted).

Nor does this Court's decision in *Hawkins* offer support for Kellenberger's objections. In that case, a testifying agent "went far beyond permissible testimony when he repeatedly provided speculative interpretive commentary on the meanings of phone calls." *Hawkins*, 934 F.3d at 1261 (quotations omitted). Officer Wiggins did not do that here: he explained code words, identified voices, and testified to his own experience in drug investigations. Unlike the agent whose testimony was erroneously admitted in *Hawkins*, Officer Wiggins did not stray into "wholesale interpretation of the evidence," he did not impermissibly interpret "clear statements," and he did not "effectively spoon-fe[e]d his interpretations of the phone calls" to the jury, "interpreting even ordinary English language." *Id.* at 1261, 1264–65.

4                      Opinion of the Court                  24-13417

Because Officer Wiggins offered appropriate lay testimony based on his experience, the district court did not abuse its discretion in allowing the testimony.  And even if some portion of his testimony was wrongly admitted, any error was harmless because there was plenty of other evidence to support the verdict, including transcripts of the wiretapped calls, physical evidence found at Kellenberger's house, forensic analysis of that evidence, and GPS tracking data of his co-conspirator.  *See United States v. Frediani*, 790 F.3d 1196, 1202 (11th Cir. 2015).

**AFFIRMED.**